**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Samuel CAMARILLO–TELLO,**
**Defendant–Appellant.**

**No. 00–30029.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 8, 2000

Filed Jan. 3, 2001

---

Michael Filipovic, Assistant Federal Public Defender, Seattle, Washington, for the defendant–appellant.

David G. Campbell, Assistant United States Attorney, Seattle, Washington, for the plaintiff-appellee.

Before: B. FLETCHER and FISHER, Circuit Judges, and SCHWARZER, District Judge.[1]

BETTY B. FLETCHER, Circuit Judge

Samuel Camarillo–Tello appeals the sentence imposed following his guilty plea pursuant to a plea agreement. The issue on appeal is whether the sentence should be vacated because the government breached the plea agreement.[2] We have jurisdiction pursuant to 28 U.S.C. § 1291. We vacate Camarillo–Tello's sentence and remand to another judge for re-sentencing.

---

1. The Honorable William W. Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

2. Camarillo–Tello's brief had also raised a claim under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Specifically, he argued that *Apprendi* effectively overruled *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), and, therefore, that the

## FACTS AND PROCEDURAL HISTORY

The defendant-appellant, Samuel Camarillo–Tello, is a Mexican citizen who was deported from the United States in 1992, 1995, and 1998. While imprisoned in the King County Jail for a hit and run incident, the Immigration and Naturalization Service ("INS") located Camarillo–Tello. A detainer was lodged with the jail and Camarillo–Tello was transferred to INS custody and then prosecuted in federal court for illegal reentry into the United States. A felony information charging him with illegal reentry in violation of 8 U.S.C. § 1326(a) was filed on July 26, 1999. Shortly thereafter Camarillo–Tello waived his right to grand jury indictment and on August 11, 1999, pled guilty to one count in the information.

In relevant part, the plea agreement read as follows:

> The Government will recommend a departure under § 5K2.0 of the Sentencing Guidelines that the defendant receive a four(4)-level adjustment to his Offense Level on the basis that his stipulation to the Notice of Intent to Reinstate dated June 21, 1999 … and waiver of any appeal therefrom, and the defendant's participation in the "fast track" program for illegal reentry prosecutions by indicating his acceptance of the terms of this plea agreement before the grand jury indictment, all of which is conduct not contemplated by the Guidelines.

In advance of sentencing, the government filed a written sentencing memorandum on January 24, 2000. That memoran-

district court improperly enhanced his sentence on the basis of prior convictions for aggravated felonies that were not submitted to a jury, and proved beyond a reasonable doubt. As counsel conceded during oral argument, this precise claim was recently addressed and rejected in *United States v. Pacheco–Zepeda*, 234 F.3d 411 (9th Cir.2000). It is therefore unnecessary to address this issue beyond saying that *Pacheco–Zepeda* directly disposes of Camarillo–Tello's *Apprendi* claim.

dum recommended an "additional four point downward adjustment for stipulating to removal pursuant to U.S.S.G. 5K2.0." The government's memorandum mentions Camarillo–Tello's "stipulating to removal," but does not mention the other grounds for the four-level departure, namely waiver of appeal and "fast track" participation. In contrast to the government's memorandum, the Probation Officer recommended only a two-level downward departure, stating:

> The sentence recommended by the Probation Office represents a two level downward departure for the defendant's stipulated removal from the United States. The probation office does not recommend a further departure on these grounds because of the defendant's history of prior deportations.

Like the government's memorandum, the Probation Officer's recommendation makes no mention of Camarillo–Tello's participation in the "fast track" program or his waiver of appeal as further grounds for the four-level departure.

Sentencing took place on January 28, 2000. The district court requested that defense counsel address the court first. Defense counsel told the court that the government was making a recommendation for a "four level departure based on the stipulation to deportation and the fact that Mr. Camarillo has participated in the fast track program." Defense counsel also noted that while Camarillo–Tello had been thrice deported, there were other cases in the Western District of Washington involving individuals with multiple deportations who had still received a full four-level departure, "particularly where they enter their guilty plea pursuant to the government's fast track program." The court at that point stated:

> Let me respond to that. I'm going to follow the recommendation of Probation. I think, frankly, under the circumstances of this case that's a generous recommendation. I'll give him two points for stipulation to deportation, not the four.

Defense counsel made further arguments in favor of other departures, but then returned to the request for the four-level downward departure. The judge then asked the government attorney to address the court. The following colloquy took place:

> AUSA: Your Honor, just briefly. In light of the fact the defendant has been forthcoming in admitting responsibility for this crime, as well as the fact that he has agreed to deportation, we believe the recommendation of Probation is appropriate.
>
> Court: All right. Ask the defendant to approach the podium.
>
> Defense Counsel: Your Honor, before I—if I may just address one thing [the AUSA] said. Frankly, I think the Government's comments are inconsistent with their plea agreement. Their plea agreement requires them to advocate for the full four-level departure and not join the Probation recommendation, which is a higher recommendation. I'll object to that.
>
> AUSA: If I may respond briefly, Your Honor, just to clarify. I had done so in light of the fact that the Court appears to have already ruled on the degree of departure. That's why I've altered my recommendation.

The district court followed the probation officer's recommendation and gave Camarillo–Tello only a two-level departure. The district court sentenced Camarillo–Tello to a term of 63 months, with credit for one month served. He timely appealed.

## DISCUSSION

We review alleged violations of a plea agreement de novo. *United States v. Coleman*, 208 F.3d 786, 790 (9th Cir.2000). Plea agreements are contracts, and the government is held to the literal terms of the agreement. *United States v. Johnson*, 187 F.3d 1129, 1134 (9th Cir.1999). Ambiguities are construed in favor of the defendant. *United States v. De la Fuente*, 8

F.3d 1333, 1338 (9th Cir.1993). However, unless specifically required in the agreement, the government need not make the agreed recommendation enthusiastically. *United States v. Benchimol*, 471 U.S. 453, 455, 105 S.Ct. 2103, 85 L.Ed.2d 462 (1985).

■ There is no disagreement between the parties as to what the terms of the plea agreement contemplate: the government promised to recommend a four-level departure. On appeal, Camarillo–Tello argues that the government breached this promise by not stating all of the reasons for making the recommendation as outlined in the agreement and by altering the recommendation at the sentencing hearing. The government argues that it kept its promise to recommend the departure, even if it did not do so enthusiastically. We are persuaded that the government has breached the plea agreement in two ways.

First, the government's sentencing memorandum was insufficient since it did not include all of the reasons underlying the recommendation as stated in the plea agreement. Specifically, in the plea agreement the government promised to recommend the four-level departure "on the basis" of Camarillo–Tello's "stipulation to the Notice of Intent to Reinstate ..., waiver of any appeal therefrom, and the defendant's participation in the 'fast track' program for illegal reentry prosecutions by indicating his acceptance of the terms of this plea agreement before the Grand Jury indictment ..." We interpret the "on the basis" language to mean that the government was required to state the underlying grounds for its four-level departure recommendation to the sentencing court. The government's sentencing memorandum stated only one reason for the recommendation. It recommended: "an additional four-point downward adjustment *for stipulating to removal* pursuant to U.S.S.G. § 5K2.0." (emphasis added).

One can stipulate to removal (i.e. agree not to contest a notice of intent to reinstate an order of deportation) without waiving appeal and participating in the "fast track" program. By not stating all of the reasons for the recommendation as is promised by the "on the basis" language of the agreement, the government did not literally comply with the agreement's terms. Thus, the issue is not enthusiasm, but the government's obligation under the language of the agreement to disclose all of its reasons in support of the recommendation. *See United States v. Fisch*, 863 F.2d 690, 690 (9th Cir.1988) (holding that where the plea agreement required the government to inform the sentencing court of all defendant's cooperation, "the issue ... is not whether the prosecutor enthusiastically disclosed [his] cooperation, but whether the prosecutor disclosed all cooperation").

Second, and more significantly, the government also breached the plea agreement when, at sentencing, it did not orally recommend the four-level departure. Following statements by the court that suggested it was not inclined to make a four-level departure, the government stated that "[it] believe[s] the recommendation of Probation is appropriate." When defense counsel objected that this recommendation was inconsistent with the plea agreement, the government responded that it had "altered [its] recommendation" in light of the district court's apparent ruling on the issue. The government's "alteration" of its recommendation was impermissible.

■ "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). That promise is not fulfilled if, while making the recommendation, the prosecutor contradicts that recommendation with statements indicating a preference for a harsher sentence. *See Johnson*, 187 F.3d at 1135. By "altering" its recommendation and supporting that of the Probation Officer, the government breached its agreement with Camarillo–Tello.

■ The government's argues that by the time it altered its recommendation, the district court had already decided to deny the four-level departure and its alleged breach was therefore immaterial. This argument is to no avail as the district court had not at that point heard from the government, and therefore could not yet have legally imposed a sentence. *See* Fed. R.Crim.P. 32(c)(3)(D). More importantly, when the government agrees to recommend a certain sentence, or in this case a certain departure, the benefit to the defendant is that it presents a "united front" to the court. The idea is that when the sentencing court hears that both sides believe a certain sentence is appropriate and reasonable in the circumstances, this is more persuasive than only the defendant arguing for that sentence. Presenting this "united front" is the defendant's benefit of the bargain. It is not always much of a benefit, as the sentencing courts do not have to follow the joint recommendation. Nevertheless, the chance that the court will follow the joint recommendation is often the basis upon which defendants waive their constitutional right to trial.

The government's argument here essentially is that the district court would not have been swayed by the "united front" as it had already made up its mind. That may be true, but it is irrelevant. Anytime a defendant enters an agreement to plead guilty in exchange for a sentence recommendation, the defendant knows the court may not grant that recommendation. What the defendant wants and is entitled to is the added persuasiveness of the government's support regardless of outcome.

The government's written recommendation for a four-level departure was undercut both by its failure to make that recommendation orally at sentencing and by the government's affirmative statement in support of the probation officer's recommendation. We therefore reverse and remand for re-sentencing. As we are required to

do, we remand the case to a different sentencing judge. *See United States v. Mondragon,* 228 F.3d 978, 981 (9th Cir. 2000) ("[W]e are required to ... remand for re-sentencing before a different judge ... We emphasize that this is in no sense to question the fairness of the sentencing judge ... [w]e remand to a different judge for re-sentencing because the case law requires us to do so. We intend no criticism of the district judge by this action, and none should be inferred."). The error in this case lies entirely with the government and its breach of its plea agreement, and not with the sentencing judge.

We VACATE appellant's sentence and REMAND for re-sentencing before a different judge.