UNITED STATES of America,
Plaintiff—Appellee,

v.

Richard Dehart CHARLESWORTH,
Defendant—Appellant.

No. 00–50117.

D.C. No. CR–99–01151–E.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 16, 2001.

Decided Feb. 26, 2001.

Before TASHIMA and FISHER, Circuit Judges, and ZILLY, District Judge.*

MEMORANDUM **

Appellant Richard Charlesworth pled guilty pursuant to a plea agreement to the manufacture of counterfeit currency. He contends the government breached the plea agreement by arguing at sentencing that more than $800,000 in counterfeit currency was attributable to him, that the

district court sentenced him based upon an unreliable Secret Service report and that there was insufficient evidence to adjust his sentence upward by 11 points for manufacturing over $800,000 in currency.

The Court reviews alleged violations of a plea agreement de novo. *United States v. Camarillo-Tello,* 236 F.3d 1024, 1026 (9th Cir.2001). "Plea agreements are contracts, and the government is held to the literal terms of the agreement." *Id.* (quoting *United States v. Johnson,* 187 F.3d 1129, 1134 (9th Cir.1999)). If "a term of a plea agreement is not clear on its face, we look to the facts of the case to determine what the parties reasonably understood to be the terms of the agreement. If, after we have examined the extrinsic evidence, we still find ambiguity regarding what the parties reasonably understood to be the terms of the agreement, then the government 'ordinarily must bear responsibility for any lack of clarity.'" *United States v. Clark,* 218 F.3d 1092, 1095 (9th Cir.2000) ( quoting *United States v. De la Fuente,* 8 F.3d 1333, 1338 (9th Cir.1993)).

The plea agreement, in its relevant part, states:

The parties will recommend the following Base Offense Level and Adjustments and Departures under the guidelines:

**Counterfeit Offense:**

| | | |
|---|---|---|
| 1. Base Offense Level [§ 2 B5.1(a) ] | 9 | |
| 2. Value of Counterfeit [§ 2 B5.1(b)(1) ] | + 11 * | |
| 3. Acceptance of Responsibility [§ 3E1.1] | − 3 | |
| Total = | 17 | |

The "further adjustment" section, actually

---

* Honorable Thomas S. Zilly, United States District Judge for the Western District of Washington, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

entitled "other adjustments," states: "The parties agree that Government will not seek a greater accountable loss adjustment than $800,000 from the fraud table of U.S.S.G. § 2F1.1(b)(1)(L). The defendant reserves the right to seek a lower accountable loss adjustment than the $800,000 that the Government will seek."

Charlesworth contends the government breached this agreement when it argued he was responsible for manufacturing over $850,000 in counterfeit currency. While we agree that the agreement could have been clearer, we do not read it as restricting the government from making that argument. It is clear from the agreement and Charlesworth's sentencing memorandum that both parties reasonably understood that the government would be recommending an 11 point upward adjustment based upon the amount of currency Charlesworth manufactured, and that Charlesworth could argue for a lower adjustment.

In particular, the plea agreement states that both parties will recommend an 11 point adjustment and references specific provisions of the Sentencing Guidelines— § 2 B5.1(b)(1) and § 2F1.1(b)(1)(L). These provisions provide for an 11 point upward adjustment if the defendant manufactured $800,001 to $1,500,000 in counterfeit currency. The specific reference to § 2F1.1(b)(1)(L) makes it clear that the reference to "$800,000" in the agreement was only a shorthand way of describing the substance of that provision. The reference to § 2F1.1(b)(1)(L) is also completely consistent with the parties' understanding of an 11 level increase based on the amount of counterfeit currency involved, as reflected in section XI.A.(2) of the plea agreement. Under our reading of the plea agreement, the parties agreed that the subsection L increase of 11 levels was proper, but left the defendant free to

seek a lower "accountable loss adjustment."

At sentencing, Charlesworth did seek a lower accountable loss than $800,000. The government was then forced to substantiate its contention that Charlesworth manufactured enough currency to justify an 11 point enhancement. It was at that time that the government put forward evidence of counterfeit attributable to Charlesworth in excess of $800,000. Even though the government had evidence that Charlesworth was involved with enough counterfeit to justify an even greater enhancement, the government limited its sentencing recommendation to the agreed upon 11 level enhancement and the 57 month term explicitly called for by Section XI.G of the agreement. Accordingly, we hold there was no breach of the plea agreement.

Next, Charlesworth argues that the district court's reliance upon a Secret Service report regarding the amount of counterfeit currency it recovered attributable to him violated due process because it was unreliable and inadmissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

Sentencing courts "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3; *see also* Fed.R.Evid. 1103(d)(3) ("The [Federal Rules of Evidence] do not apply in ... [p]roceedings for ... sentencing ...."). *Daubert* and *Kumho Tire* are applications of Federal Rule of Evidence 702 and therefore are not controlling at sentencing. *Id.* "A dis-

trict court judge's determination that a particular item of evidence is sufficiently reliable is reviewed for abuse of discretion." *United States v. Marin–Cuevas,* 147 F.3d 889, 895 (9th Cir.1998).

The Secret Service report submitted at Charlesworth's sentencing was corroborated and supported by several independent sources including Agent Wadsworth's testimony and the proffer of a seized calendar and map. Given these sources, we hold that the district court did not abuse its discretion in using the Secret Service report. *See id.* (upholding use of Probation report at sentencing); *United States v. Burns,* 894 F.2d 334, 336–37 (9th Cir.1990) (upholding use of Secret Service report at sentencing).

■ Last, Charlesworth argues that the district court improperly attributed $857,000 in counterfeit currency to him. A district court's findings of fact calculating the amount of loss are reviewed for clear error. *United States v. Blitz,* 151 F.3d 1002, 1009 (9th Cir.1998).

Charlesworth stated in his interview with probation that "he was the only individual involved in manufacturing the counterfeit currency, and that specifically, Nikrasch was not involved in the printing.... He added that he was confident no one else printed any counterfeit currency while he was in the home up to 1995, but that he had no idea what occurred after he left the residence." Other evidence presented to the district court showed that over 900,000 impressions were made on defendant's counterfeiting equipment from 1994 to 1995. This corresponds to the printing of at least 1,800,000 bills in $20, $50 and $100 denominations and at least $36 million in counterfeit currency. Further, at the time of sentencing, the Secret Service had recovered over $857,000 in counter-

feit currency that was made on defendant's counterfeiting equipment. Based upon this combination of evidence, we hold that the district court did not clearly err in finding that Charlesworth was responsible for the manufacturing of more than $800,000 in counterfeit currency.

■ Charlesworth's remaining attacks on the district court's finding of fact go to whether the government was able to attribute the passing of the counterfeit currency solely to him as opposed to his associate Nikrasch. Defendant was charged with the *manufacture* of counterfeit currency in violation of 18 U.S.C. § 471, not the *passing* of currency under § 472. Whether the counterfeit currency manufactured by Charlesworth was passed by him or someone else is irrelevant for sentencing purposes. Finally, Charlesworth's interpretation of the plea agreement to limit the relevant conduct to the passing of currency is incorrect. The agreement defined relevant conduct to include his manufacturing activity as well as all of the counterfeit currency passed in other jurisdictions.

For the foregoing reasons, the district court did not err in imposing an 11 point upward adjustment.

AFFIRMED.